Roger ERDELY, Nicholas Denardo, Stanley Jurewicz, Thomas C. Larkin, and Donald Thomas, Appellants

v.

HINCHCLIFFE AND KEENER, INC., Fireman's Fund Insurance Company, Home Insurance Company, Inc., and Maryland Casualty Company, Appellees.

Superior Court of Pennsylvania.

Argued May 19, 2004.

Filed April 25, 2005.

Reargument Denied July 5, 2005.

David Rodes, Pittsburgh, for appellants.

Alan S. Miller, Pittsburgh, for Maryland Casualty, appellee.

Stephen R. Mlinac, Pittsburgh, for Hinchliffe, appellee.

Before: ORIE MELVIN, BOWES and McCAFFERY, JJ.

ORIE MELVIN, J.

¶ 1 Appellants, Roger Erdely, Nicholas Denardo, Stanley Jurewicz, Thomas C. Larkin, and Donald Thomas, appeal from the trial court's Order sustaining the Appellees', Hinchcliffe and Keener, Inc., Fireman's Fund Insurance Company, Home Insurance Company, Inc., and Maryland Casualty Company ("collectively H & K"), preliminary objections in the nature of a demurrer and dismissing Appellants' complaint. On appeal, they challenge the trial court's determination that they lacked standing to pursue their latent products liability claims against a dissolved corporation and its insurance carriers. We affirm.

¶ 2 From our review of the record we glean the following. The averments of the

complaint reveal that Appellants are five individuals claiming to have been exposed to asbestos products used by H & K. Appellants are potential asbestos claimants who have not been diagnosed with any asbestos-related disease. Appellants filed a class action seeking declaratory relief, compensatory damages and punitive damages against H & K. Appellants averred in their complaint that they were exposed to asbestos containing materials installed and supplied by H & K, and, although their exposure has not yet manifested into any asbestos-related disease, H & K has failed to make adequate provisions for such potential claims in dissolving the corporation as required under the Business Corporation Law (BCL). They further alleged that H & K was insured and asked that the remaining insurance policy limits be deemed an asset of the corporation and placed in the possession of a receiver to use for the benefit of Appellants should they suffer an asbestos-related disease in the future.

¶ 3 Appellees filed preliminary objections in the nature of a motion to dismiss for legal insufficiency of the complaint on the grounds that Appellants failed to allege a justiciable controversy pursuant to Pa.R.C.P. 1028(a)(4) and lacked capacity to sue pursuant to Pa.R.C.P. 1028(a)(5). The trial court determined that Appellants lacked standing to seek relief because Appellants did not aver facts that supported the existence of a direct, immediate and substantial injury. Additionally, the trial court found that declaratory relief was not available due the lack of a direct, substantial and present interest to assert against H & K's insurance carriers. Consequently, the trial court sustained the preliminary objections and dismissed the complaint. Subsequently, the trial court timely granted Appellants' Motion for Reconsideration and vacated its July 1, 2003 Order. The trial court entered further argument wherein Appellants argued new theories of standing based upon the interplay of §§ 1979, 1994 and 1995 of the BCL. After oral argument and without issuing a new opinion addressing these novel theories, the trial court reinstated its July 1, 2003 Order dismissing the complaint and finding the motion to amend moot. This appeal followed.

¶ 4 Appellants present the following question for our review:

1. Whether the Pennsylvania Business Corporation Law expressly authorizes Appellants' underlying 'unmatured' action?

2. Whether Appellants have standing to challenge Hinchliffe & Keener's dissolution?

Appellants' brief, at 4.

¶ 5 We begin by noting our scopes and standards of review concerning preliminary objections and declaratory judgments. An appeal from an order granting preliminary objections in the nature of a demurrer is subject to plenary review. *Huddleston v. Infert. Center of America*, 700 A.2d 453, 456 (Pa.Super.1997).

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the

denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

*Brosovic v. Nationwide Mutual Insurance Company*, 841 A.2d 1071, 1073 (Pa.Super.2004) (citations omitted). It is well settled that preliminary objections in the nature of a demurrer require the court to resolve issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer. *Mistick, Inc. v. Northwestern National Casualty Company*, 806 A.2d 39, 42 (Pa.Super.2002). In reaching our decision, we need not consider the pleader's conclusions of law, unwarranted inferences from facts, opinions, or argumentative allegations. *Wagner v. Waitlevertch*, 774 A.2d 1247, 1250 (Pa.Super.2001).

■ ¶ 6 "When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion." *Theodore C. Wills Company, Inc. v. School District of Boyertown*, 837 A.2d 1186, 1188 (Pa.Super.2003).

¶ 7 Appellants first assert that they have standing to bring this action because the BCL expressly authorizes the instant "unmatured tort claim" against a dissolved corporate tortfeasor pursuant to §§ 1979 and 1994. These provisions provide, in pertinent part, as follows:

§ 1979. Survival of remedies and rights after dissolution

(a) General rule.—The dissolution of a business corporation, either under this subchapter or under Subchapter G (relating to involuntary liquidation and dissolution) or by expiration of its period of duration or otherwise, shall not eliminate nor impair any remedy available to or against the corporation or its directors, officers or shareholders for any right or claim existing, or liability incurred, prior to the dissolution, if an action or proceeding thereon is brought on behalf of:

\* \* \* \* \* \*

(2) any other person before or within two years after the date of the dissolution or within the time otherwise limited by this subpart or other provision of law, whichever is less. See ... 1994 (relating to disposition of unmatured claims).

15 Pa.C.S.A. § 1979.

§ 1994. Disposition of unmatured claims

(a) Contractual claims.—The dissolved business corporation or successor entity shall offer any claimant whose contractual claim made pursuant to section 1992 (relating to notice to claimants) is contingent, conditional or unmatured, such security as the corporation or successor entity determines is sufficient to provide compensation to the claimant if the claim matures. The corporation or successor entity shall send the offer to the claimant by certified or registered mail, return receipt requested, within 90 days after receipt of the claim and, in all events, at least 30 days before the expiration of the two-year period specified in section 1979(a)(2) (relating to survival of remedies and rights after dissolution). A notice sent pursuant to this section shall include or be accompanied by a copy of this subchapter and of section 1979. If the claimant offered the security does not deliver to the corporation or successor entity a written notice rejecting the offer within 60 days after mailing of the offer for security, the claimant shall be deemed to have accepted the

security as the sole source from which to satisfy his claim against the corporation.

(b) Other claims.—Except as provided in section 1997(d) (relating to liability of directors), the holder of any other claim may bring an action against the dissolved corporation or its directors, officers or shareholders within the time limited by section 1979(a) [ (two years) ].

15 Pa.C.S.A. § 1994.

¶ 8 Furthermore, the 1992 Amended Committee Comment following § 1994 explains that Subchapter H (§§ 1991–1997 dealing with post-dissolution provision for liabilities) "divides the possible claims against a dissolved corporation into three categories: matured claims, unmatured contractual claims and other unmatured claims. Subsection (b) applies only to the last type of claim." Thus, the holder of the third type of claim, *i.e.*, other unmatured claims, may bring a claim within the time limited by § 1979(a), which is "two years after the date of the dissolution." *See* Amended Committee Comment (1992), following § 1992.

¶ 9 For a better understanding of the arguments presented in this appeal some background on the legal effect of corporate dissolution on claims of creditors of the corporation is necessary. At common law, the dissolution of a corporation was its civil death; dissolution immediately abated all actions by and against a corporation and ended its capacity to sue or be sued. In Pennsylvania, under the Act of May 21, 1881, P.L. 30, and its amendments, dissolved corporations could "bring suits, and maintain and defend suits already brought, for the protection and possession of their property, and the collection of debts and obligations owing to, or by, them." Under this version of the statute a dissolved corporation could institute an action after its dissolution and any action brought by or against the corporation prior to its dissolu-

tion would not abate upon dissolution. However, this statute was silent as to the bringing of an action against a corporation following its dissolution. Accordingly, it was held in *Zimmerman v. Puro Coal Co.*, 286 Pa. 108, 110, 133 A. 34, 35 (1926), that a creditor could not, under the Act of 1881, *supra*, begin or prosecute a common-law action against a corporation which had been dissolved.

¶ 10 To ameliorate the harsh effects of the common law upon creditors, Pennsylvania as well as other states enacted statutory provisions whereby corporations continued for the limited purpose of "winding up" corporate affairs. *See* 15 Pa.C.S.A. § 1978 (for current version). Section 1111 of the BCL of May 5, 1933, P.L. 364, as amended by the Act of June 24, 1939, P.L. 698, sec. 4, then provided that the dissolution of a business corporation by the issuance of a certificate of dissolution by the Department of State "shall not take away or impair any remedy given against such corporation, its directors or shareholders, for any liability incurred prior to such dissolution, if suit thereon is brought and service of process had before or within two years after the date of such dissolution. Such suits may be prosecuted against and defended by the corporation in its corporate name." These statutes extended the corporate life of a dissolved company for a specific period post-dissolution to allow defunct corporations to maintain and defend lawsuits. The current version of Pennsylvania's survival statute applicable here provides, in relevant part, that "dissolution of a business corporation, . . . shall not eliminate nor impair any remedy available to or against the corporation . . . for any *right or claim existing, or liability incurred*, prior to the dissolution, if an action . . . is brought . . . within two-years after the date of the dissolution." 15 Pa.C.S.A. § 1979(a)(2).

¶ 11 Under the present version of the BCL, the Legislature has created a process whereby a dissolved corporation can bar future claims, thus cutting off the possibility that the corporation's potential liability could never be completely resolved. After the corporation's dissolution becomes effective, the corporation must give either actual written notice of the dissolution pursuant to § 1992(c)(2) or notice by publication pursuant to § 1992(c)(1) to potential claimants against the corporation. Specifically, 15 Pa.C.S.A. § 1992 requires the dissolving corporation to "give notice of the dissolution requesting all persons having a claim against the corporation to present their claims ... in accordance with the notice." Actual notice in addition to publication is required to known creditors, those having unmatured contractual claims and municipal corporations where the dissolving corporation in located. 15 Pa. C.S.A. § 1992(c). Section 1993 provides for the acceptance or rejection by the dissolving corporation of matured claims made against it and gives a claimant the right to bring suit within 90 days if a claim is rejected. With regard to "contingent, conditional, or unmatured" contractual claims presented in compliance with the notice, the corporation must offer the claimant security it determines to be sufficient to provide compensation to the claimant if the claim matures. The offer must be mailed to the claimant within ninety days after receipt of the claim and, in all events, at least thirty days before the expiration of the two-year period for commencement of an action. If the claimant does not reject the offer within sixty days, he or she is deemed to have accepted the security as the sole source from which to satisfy the claim against the corporation. *See* 15 Pa.C.S.A. § 1994(a). If the claimant does reject the offer, the corporation must file an application with the court for a determination of the amount and form of security that will be sufficient to provide compensation to such claimant. *See* 15 Pa.C.S.A. § 1995(a)(1).

¶ 12 With regard to the holder of other unmatured claims, they "may bring an action against the dissolved corporation" within two years after the date of dissolution. 15 Pa.C.S.A. § 1994(b). In addition, a dissolved corporation that has elected to proceed under Subchapter H, and has given notice in accordance with § 1992, is required to file an application with the court for a determination of the amount and form of security:

> that will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the corporation or that have not arisen but that, based on the facts known to the corporation or successor entity, are likely to arise or to become known to the corporation or successor entity prior to the expiration of the two-year period specified in section 1979(a)(2) (relating to survival of remedies and rights after dissolution).

15 Pa.C.S.A. § 1995(a)(2).

¶ 13 Appellants argue that they have clearly filed suit within two years of the date of dissolution, and their claim is of the unmatured type as provided for in § 1994(b). Thus, they maintain that they have standing pursuant to the BCL to bring the instant suit. Conversely, Appellees argue that claims not accruing within the two year period after dissolution are barred. Specifically, Appellees contend that "Section 1994(b) does not allow the filing of a claim that is not legally cognizable, but merely states that [unmatured] claims other than those addressed in Section 1994(a) (*i.e.* unmatured contractual claims) must comply with the limitation period set forth in Section 1979(a)." Brief of Maryland Casualty Company at 6.

¶ 14 In interpreting the BCL, we are mindful that

[t]he objective of statutory interpretation and construction is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id. See also Commonwealth v. Lopez,* 444 Pa.Super. 206, 663 A.2d 746 (1995). "When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption that in drafting the statute, the General Assembly intended the entire statute to be effective." *Id.* at 748. "The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning." *Commonwealth v. Heberling,* 451 Pa.Super. 119, 678 A.2d 794, 795 (1996). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).

Generally speaking, the best indication of legislative intent is the plain language of a statute. . . . Under [1 Pa. C.S.A.] Section 1921(c), it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. Consistently with the Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity. *In Re Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, [242], 843 A.2d 1223, 1230 (2004) (internal citations omitted).

*Commonwealth v. Finley,* 860 A.2d 132, 140 (Pa.Super.2004).

¶ 15 While there is no dispute that the Appellants filed suit within two years of dissolution, we disagree with their conclusion that their claim is of the type contemplated by the survival of remedies and rights provision of § 1979. Appellants' argument is premised upon an overly broad interpretation of § 1979(a). Appellants interpret "any right or claim existing" to mean the right not to be exposed to asbestos. The problem with this interpretation is that no such legal right exists. *See Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996) (holding that asymptomatic pleural thickening was not a compensable injury and plaintiffs were not precluded from subsequently commencing an action for an asbestos-related injury when symptoms developed and physiological impairment began). Appellants fail to consider the import of the limiting language immediately following this phrase, which when read in its entirety states "any right or claim existing, or liability incurred, prior to the dissolution." As with any tort claim, a cause of action does not accrue until there is an injury. Therefore, we agree with Appellees' position that Appellants have failed to state a legally cognizable action as contemplated in § 1994(b). It is axiomatic that a properly pled tort action requires a *prima facie* showing of a duty, a breach of that duty and resultant damages. At the time of the filing of this suit, Appellants by their own admission cannot establish damages. We find, when § 1979(a) is read as a whole, the unambiguous import is that the dissolution of a business corporation does not take away or impair any remedy given against the corporation, its directors, or its shareholders for any right or claim accrued or liability incurred prior to the dissolution, or in certain situations that accrues within two years thereafter, pro-

vided an action is brought thereon and service had within two years after the date of dissolution.

 ¶ 16 Nor are we persuaded by Appellants' novel argument that § 1994(b), dealing with the disposition of other unmatured claims, "carves out an exception to the general rule that a tort victim must await [the] manifestation of symptoms before bringing suit." Appellants' brief, fn.1 at 9. To accept Appellants' position would require the court to keep their lawsuit open in perpetuity even though they could not presently survive a demurrer on the chance that they may someday suffer a compensable injury. Section 1994(b) of the BCL does not authorize such a procedure. We view § 1994(b) as providing for the survival of unmatured non-contractual claims but only to the extent that they subsequently mature or accrue after the effective date of dissolution and within two years thereof upon which a suit is filed. Section 1994(b) merely allows holders of unmatured non-contractual claims the benefit of the full two-year limitation period set forth in Section 1979(a) rather than the shorter time period provided by the notice provisions of § 1992. The difference between a holder of a claim described in § 1992(b) (i.e. unmatured contractual claims) and holders of other unmatured claims under § 1994(b) is that the latter claimants would be unknown to the corporation, and, thus, they could not be given actual notice pursuant to § 1992(c)(2). While Appellants' claims are clearly unmatured as they are contingent upon the happening of a future event, i.e, manifestation of an injury, or in other words, legal damages, their claims still had not accrued at the time they filed suit and apparently did not even accrue within two years after dissolution (March 24, 2001). Thus, unless the claim is such that it is permitted by both the scope and time limitations of the statute it must be held to have abated.

 ¶ 17 Furthermore, we reject Appellants' argument that our interpretation of § 1994(b) as precluding them from going forward with their as of yet still unmatured tort claims is violative of the Due Process, Equal Protection and Remedies Clauses of the U.S. and Pennsylvania Constitutions. We find Appellants' attempt to invoke constitutional arguments is misplaced; the present case is not an instance of legislative curtailment of a remedy, since at common law no such remedy existed. Quite the opposite, the provisions here at issue extend limited remedies against a dissolved corporation that would otherwise have abated. Similarly, Appellants' public policy argument is unavailing, as we are in no position to fashion equitable remedies to replace valid legislatively enacted procedures for corporate dissolution. See Gustine Uniontown Assocs. v. Anthony Crane Rental, Inc., 577 Pa. 14, 34, 842 A.2d 334, 347 (2004) (noting "absent constitutional infirmity, the courts of this Commonwealth may not refuse to enforce on grounds of public policy that which the legislature has prescribed.") (quoting Pantuso Motors, Inc. v. CoreStates Bank, N.A., 568 Pa. 601, 610, 798 A.2d 1277, 1283 (2002); see also, Olin Mathieson Chem. Corp. v. White Cross Stores, Inc., No. 6, 414 Pa. 95, 98, 199 A.2d 266, 267 (1964)(stating that the Legislature has the exclusive responsibility to enunciate public policy). Accordingly, we find Appellants' first issue is without merit.

¶ 18 Appellants also claim they have standing to challenge H & K's dissolution pursuant to § 1995(a)(2). This subsection, in relevant part, requires the dissolving corporation to file an application with the court for a determination of the amount and form of security that "will be reasonably likely to be sufficient to provide com-

pensation for claims ... that have not arisen but that, based on the facts known to the corporation ..., are likely to arise ... prior to the expiration of the two-year [survival] period." *Id.* Appellants maintain that as latent claimants they are the intended beneficiaries of the court proceedings mandated by § 1995(a)(2) and thus have standing to pursue this claim.

¶ 19 We find that the plain language of § 1995(a)(2) does indeed place an obligation upon H & K to seek a determination from the Court of Common Pleas of the amount and form of security "for claims ... that have not arisen but that, based on the facts known to the corporation ..., are likely to arise" within two years of dissolution. (emphasis added). We view this section as providing a judicial mechanism crafted to balance the conflicting interests of ensuring some sort of remedy is available to foreseeable, unknown future claims and yet bringing finality to the dissolution process. Compliance with § 1995 provides corporate directors with a mechanism that will permit distribution of corporate assets upon corporate dissolution and also avoid the risk that a future claimant against the corporation will, at some future time, be able to establish that the distribution was in violation of any duty owed by the director to the corporation's creditors upon dissolution. For the foreseeable, unknown future claimant, § 1995 provides the safeguards of a court-approved amount and form of security "reasonably likely to be sufficient" to compensate their claims and the possibility of the appointment of a guardian *ad litem.* When §§ 1979, 1992, 1994 and 1995 are read together, it is clear that the legislature provided an orderly scheme for winding up the corporation's affairs, taking into consideration both known and unknown claims and requiring that all known claims, including unmatured contractual claims [1], must be reasonably provided for, but only those unknown or unmatured non-contractual claims that are likely to arise within two years must be reasonably provided for.

¶ 20 Furthermore, we agree with Appellants' that they are the intended beneficiaries of the court proceedings mandated by § 1995(a)(2), and as such could have standing to challenge dissolution under this provision if properly pled. However, given this interpretation, our review of the instant complaint fails to reveal any averment that based upon facts known to H & K Appellants' unmatured products liability claims were likely to arise within two years of the effective date of H & K's dissolution. In order to successfully challenge the dissolution under § 1995 the statute still requires a showing that at the time H & K elected to pursue dissolution pursuant to Subchapter H, Appellants' latent claims were likely to arise within the two-year-period provided for in § 1979(a)(2).[2] Thus,

---

1. But not including "contingent contractual claims based on any implied warranty as to any product manufactured, sold, distributed or handled by the dissolved corporation." *See* 15 Pa.C.S.A. § 1991 (defining "Contractual claims").

2. Whether this two year period is sufficiently long enough for post-dissolution products liability claims is not a question for this Court's resolution but is more properly a matter for legislative debate. We note, for example, that Delaware has a similar corporate dissolution scheme, which provides for a longer period of time for such claims. *See* 8 Del. C. § 280(c)(3) (*stating that a corporation that has given notice of dissolution* "shall petition the Court of Chancery to determine the amount and form of security which will be likely to be sufficient to provide compensation for claims that have not been made known to the corporation or that have not arisen but that, based on facts known to the corporation ..., are likely to arise or become known to the corporation ... within 5 years after the date of dissolution or such longer period of

H & K could not have violated an obligation under § 1995 that was never alleged to have arisen.

¶ 21 Moreover, as we now know, with the expiration of the two-year period of § 1979(a)(2), Appellants are not holders of unmatured claims that were likely to arise within the two-year statutory limit, and, thus, H & K was not required to reasonably provide compensation for their benefit. While the trial court did not address this contention and did not dismiss on this basis, we may nonetheless affirm the trial court's order on any legally sufficient basis. *See Braddock v. Ohnmeiss,* 867 A.2d 539, 540 n. 5 (Pa.Super.2005)(stating that "trial court order can be affirmed as long as it is correct on any legal ground or theory regardless of the reason relied upon by the trial court.") (citing *Shearer v. Naftzinger,* 560 Pa. 634, 637, 747 A.2d 859, 861 (2000)). Accordingly, we find the averments contained in the pleadings are legally insufficient to allege a controversy that can be accorded relief under the BCL. *See* Complaint C.R. at 1, and First Amended Complaint (attached as Exhibit A to Appellants' Motion for Leave to Amend), C.R. at 20. Consequently, Appellants are not entitled to relief as a matter of law, and the complaint was properly dismissed.

¶ 22 Order affirmed.

time as the Court of Chancery may determine not to exceed 10 years after the date of disso- lution.").